O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALBERT SNELLINK, ZACHARY LEWY, SAMPSON DARUVALLA, and WILLIAM SPIEGELBERG, on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>GULF RESOURCES, INC., XIAOBIN LIU, MIN LI, and MING YANG,<br><br>    Defendants. | Case No. CV 11-03722-ODW(MRWx)<br><br>**ORDER DENYING MOTION TO DISMISS PLAINTIFFS' AMENDED CLASS ACTION COMPLAINT [33]** |

Pending before the Court is Defendant Gulf Resources, Inc.'s motion to dismiss Plaintiffs' amended class action complaint ("AC") under Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 33.) Having considered the papers filed in support of and in opposition to the instant motion, the Court deems the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; L.R. 7-15.

## I. FACTUAL BACKGROUND

Plaintiffs brought this class action against Gulf and some of its directors and officers for violations under the federal securities laws. During the period between March 16, 2009 and April 26, 2011, Plaintiffs purchased Gulf's common stock. (AC

¶ 1.) Gulf is a Delaware Corporation with its principal executive offices located in the People's Republic of China. (*Id.* ¶ 23.)

Gulf conducts operations through its two subsidiaries, Shouguang City Haoyuan Chemical Co., Ltd. ("SCHC") and Shouguang Yuxing Chemical Industry Co., Ltd. ("SYCI"), both of which are organized under Chinese law. (*Id.* ¶ 24.) SCHC manufactures bromide and crude salt. (*Id.*) SYCI manufactures industrial chemical products used in oil and gas field exploration, oil field drilling, wastewater processing, as well as papermaking chemical agents and inorganic chemicals. (*Id.*) All of Gulf's revenue and income is generated by SCHC and SYCI. (*Id.* ¶ 25.) Gulf's common stock was actively traded under the ticker "GFRE" on the NASDAQ and the OTC BB (Over-The-Counter Bulletin Board). (*Id.* ¶ 26.) Defendant Ming Yang was Chairman of Gulf's Board of Directors and was the legal representative of SCHC and SYCI; Defendant Xiaobin Liu was Gulf's Chief Executive Officer and one of its Directors; Defendant Min Li was Gulf's Chief Financial Officer.[1] (*Id.* ¶¶ 27–28, 31–32.)

According to Plaintiffs, Gulf deceived the investing public through its SEC filings by making false and misleading statements, withholding relevant business and financial information, and engaging in accounting fraud. In particular, Plaintiffs point out the following six issues.

First, a review of SCHC and SYCI's filings to the State Administration for Industry and Commerce ("SAIC") and to the State Administration of Taxation ("SAT") suggests that Gulf maintained two different sets of accounting books.[2] (*Id.* ¶ 97.) SCHC and SYCI's SAIC filings provide inventory and sales figures that are in line with those of their competitors. (*Id.* ¶¶ 91–92.) Assuming the SCHC and SYCI

---

[1] The Court notes these individual Defendants have not been served and have not yet appeared in this lawsuit.

[2] SAIC is the Chinese government body that regulates industry and commerce in China. All Chinese companies are required to file audited financial statements with the SAIC at least annually. SAT is the Chinese equivalent to the United States Internal Revenue Service.

figures are correct, and given the fact that all of Gulf's revenue comes from these two subsidiaries, Gulf grossly overstated its financial position in its SEC filings. (*Id.* ¶¶ 96–97.) Further, the enormous discrepancy in the financial information between Gulf's SEC filings and the SAIC and SAT filings of SCHC and SYCI cannot be attributed to the insignificant differences between Chinese and U.S. accounting rules. (*Id.* ¶¶ 98–101.)

Second, Gulf's reported inventory and sales figures are incredible. (*Id.* ¶¶ 84–85.) Gulf's figures suggest that it realized a 50% profit margin based on an inventory turnover rate between 59 to 209 times in the years 2008–2010. (*Id.* ¶¶ 85–86.) Gulf's data appears false on its face when similarly situated competitors operate under a inventory turnover rate of 7 times and a profit margin below 20%. (*Id.* ¶¶ 87–90.)

Third, Gulf stated that it was one of the largest bromine producers in China, but Gulf nor its subsidiaries are listed among the top 30 Chinese bromine producers in a 2010 market report. (*Id.* ¶¶ 75–79.) According to Gulf's SEC filings, its bromine output would have placed Gulf as the number one producer, accounting for over 40% of China's bromine production in 2010. (*Id.* ¶¶ 79–82.)

Fourth, Gulf failed to disclose related party transactions by hiding the fact that Shouguang City Rongyuan Chemical Co., Ltd. ("Rongyuan"), Gulf's biggest customer in 2010 and its second biggest customer in 2008 and 2009, is a company related to Gulf. (*Id.* ¶¶ 104–108.) Rongyuan's SAIC filing shows that Yang and another Gulf Director own over 90% of Rongyuan. (*Id.* ¶¶ 110–111.) Rongyuan's website and contact information suggest that it is a subsidiary of Shandong Haoyuan Industry Group Ltd. ("Haoyuan"), which is owned by Yang and his wife. (*Id.* ¶¶ 109, 111–116.) Yang is also the founder and Chairman of the Board of Haoyuan. (*Id.* ¶ 106.) Moreover, Gulf hid the fact that Shouguang Hongye Trading Co., Ltd. ("Hongye"), one of Gulf's largest suppliers of raw materials, is owned and controlled by Haoyuan, Yang, and his family. (*Id.* ¶¶ 60–62.)

/ / /

Fifth, Gulf concealed the fact that Haoyuan, owned by Yang and his wife, is a direct competitor of SYCI. (*Id.* ¶¶ 116–119.) The relationship between Gulf and Haoyuan is further evidenced by the fact they use the same address in its filings—Gulf's SEC filings and Haoyuan's SAIC filings. (*Id.* ¶¶ 120–121.)

Finally, Gulf's SEC filings did not disclose that Liu, Gulf's Chief Executive Officer, was previously employed as the Chief Financial Officer of China Finance, a firm affiliated with listing a number of fraudulent Chinese companies in the United States. (*Id.* ¶¶ 122–128.)

Plaintiffs further claim that the alleged fraud was publically disclosed in a report issued by Glaucus Research on April 26, 2011. (*Id.* ¶ 15.) The revelation by the Glaucus report caused Gulf's stock price to fall $1.16 per share or over thirty percent on heavy trading volume, causing substantial financial damages to investors. (*Id.* ¶ 17.) Plaintiffs also state that prior to 2011, Yang and his family sold shares of Gulf, reaping between $11–$20 million. (*Id.* ¶¶ 29–30.)

Plaintiffs also aver that Gulf acted with scienter, and the material misrepresentations caused Plaintiffs' losses in connection with their purchase of Gulf's securities. (*Id.* ¶¶ 149–58.)

Gulf brought this Rule 12(b)(6) motion, contending that Plaintiffs' AC should be dismissed for failure to state a claim. Gulf argues Plaintiffs fail to meet the heightened pleading standard required in securities actions because they lack sufficient facts to show falsity, scienter, and loss causation.

## II. LEGAL STANDARD

Dismissal under Rule 12(b)(6) can be based on "the lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A complaint need only satisfy the minimal notice pleading requirements of Rule 8(a)(2)—a short and plain statement—to survive a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003); Fed. R. Civ. P.

8(a)(2). For a complaint to sufficiently state a claim, its "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While specific facts are not necessary so long as the complaint gives the defendant fair notice of the claim and the grounds upon which the claim rests, a complaint must nevertheless "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

*Iqbal*'s plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Rule 8 demands more than a complaint that is merely consistent with a defendant's liability—labels and conclusions, or formulaic recitals of the elements of a cause of action do not suffice. *Id.* The determination whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

When considering a Rule 12(b)(6) motion, a court is generally limited to the pleadings and must construe "[a]ll factual allegations set forth in the complaint . . . as true and . . . in the light most favorable to [the plaintiff]." *Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001). Conclusory allegations, unwarranted deductions of fact, and unreasonable inferences need not be blindly accepted as true by the court. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Yet, a complaint should be dismissed only if "it appears beyond doubt that the plaintiff can prove no set of facts" supporting plaintiff's claim for relief. *Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999).

### III. DISCUSSION

To assert a claim under section 10(b) and Rule 10b-5 of the Securities Exchange Act of 1934, the complaint must satisfy the dual pleading requirements of Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act of 1995 ("PSLRA"). *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 990 (9th

Cir. 2009). Under Rule 9(b), claims alleging fraud are subject to a heightened pleading requirement, which requires that a party "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). PSLRA was enacted to prevent plaintiffs from asserting baseless securities fraud claims. Under PSLRA, any securities fraud claim shall "[s]pecify each statement alleged to have been misleading, [and the] reasons why the statement is misleading." 15 U.S.C. § 78u-4(b)(1). If an allegation regarding the statement or omission is made on information and belief, the plaintiff must state with particularity all facts on which that belief is formed. 15 U.S.C. § 78u-4(b)(1); *Gompper v. VISX, Inc.*, 298 F.3d 893, 895 (9th Cir. 2002). For each alleged misleading statement, PSLRA further requires the complaint state with "particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2).

To state a claim for securities fraud under section 10(b) and Rule 10b-5, a plaintiff must adequately plead the following elements: (1) falsity, i.e., a material misrepresentation or omission, (2) scienter, i.e., a wrongful state of mind, (3) a connection with the purchase or sale of a security, (4) reliance, (5) economic loss, and (6) loss causation, i.e., a causal connection between the material misrepresentation and the loss. *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 341 (2005).

In this case, Plaintiffs' AC points to a number of misrepresentations and omissions made during the class period, which were material, made with scienter, and caused Plaintiffs' financial loss. Gulf's motion to dismiss argues Plaintiffs' AC inadequately pleads the elements of falsity, scienter, and loss causation. The Court examines these three elements in turn.

**A. Falsity**

Gulf's motion argues Plaintiffs have failed to plead sufficient facts to show falsity. Gulf's alleged misrepresentations and omissions may be grouped into six categories of falsity. These six falsities are: (1) two sets of books; (2) high inventory turnover rates and profit margins; (3) top bromine producer; (4) related party

transactions; (5) related party competitors; and (6) concealed CEO employment history. The following discussion tracks this order.

> 1. *The two sets of books allegation*

Plaintiffs' core allegation is that Gulf kept two sets of financial records—one filed with the SEC, which significantly overstated its financial results; the other filed with Chinese regulators, which showed the company was actually much less prosperous. (AC ¶¶ 91–96.) Gulf conducts operations solely through its two Chinese subsidiaries, SCHC and SYCI. (*Id.* ¶ 24.) Plaintiffs' counsel allegedly obtained SCHC and SYCI's SAIC and SAT filings and found that these two subsidiaries only earned a fraction of the revenue and income reported by Gulf to the SEC. (*Id.* ¶¶ 43–44.) Plaintiffs claim that the SAIC and SAT filings indicate Gulf's true performance, while Gulf's SEC filings contain fraudulent financial data. (*Id.* ¶ 45.)

Gulf states that its outside counsel made a trip to the SAIC office in China, obtained copies of SCHC and SYCI's SAIC filings, and had them notarized by a Chinese government agency. (Mot. 8–9.) Gulf then compared these SAIC filings with Gulf's SEC filings and concluded there is no significant discrepancy between the two sets of financial data. (*Id.*) In response, Plaintiffs challenge the authenticity of the SAIC filings that Gulf's counsel brought back from China. (Opp'n 6–7.)

The Court must first resolve whether the Court can take judicial notice of the SAIC filings proffered by Gulf's counsel. Courts have held that documents forming the basis of a plaintiff's case, but not attached to the complaint, may be judicially noticeable only if neither party questions the document's authenticity. *In re Easysaver*, 737 F. Supp. 2d 1159, 1166 (S.D. Cal. 2010) (citing *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994)). A district court cannot take judicial notice of a fact simply because it is contained within the public record if the fact is subject to reasonable dispute. *Lee*, 250 F.3d at 689–90.

In a factually similar case, the court found it inappropriate to take judicial notice of defendant's own SAT filings when plaintiffs disputed the authenticity of

those documents. *In re China Educ. Alliance, Inc.*, CV 10-9239 CAS (JCx), 2011 U.S. Dist. LEXIS 117416, at *16 (C.D. Cal. Oct. 11, 2011). Further, the defendant, a U.S.-listed Chinese company, conceded that these were not foreign public documents. *Id.* at *15. The court stated the authenticity of defendant's proffered documents was a question of fact not suited for resolution at the motion to dismiss stage. *Id.* at *16 ("The PSLRA in no way turns [a Rule 12(b)(6) motion to dismiss] into a trial-type, papers-only proceeding, much less one in which defendants get the benefit of every conceivable doubt, including credibility calls." (quoting *In re LDK*, 584 F. Supp. 2d 1230, 1260 (N.D. Cal. 2008))).

Here, Plaintiffs dispute the authenticity of SCHC and SYCI's SAIC documents obtained by Gulf. (Opp'n 6.) The Court notes these SAIC documents were not publicly available because authorization of a Gulf company representative was required for access. (Wang Decl. ¶¶ 2–6.) Further, even if these SAIC documents are public record, whether the documents contained truthful financial data is a question of fact. For these reasons, the Court finds it inappropriate to take judicial notice of SCHC and SYCI's SAIC documents obtained by Gulf.

Without the Gulf-obtained SAIC documents, the Court now must decide whether Plaintiffs' AC sufficiently pleads that Gulf overstated its financials to the SEC. This case closely resembles other Chinese securities cases in which courts have found falsity, where: (1) defendant is a U.S.-listed Chinese company, whose stock price plunged after certain Internet articles revealed that the company overstated its financials to the SEC; (2) plaintiffs (stock purchasers) sued for securities fraud; (3) plaintiffs relied on the comparison of defendant's SEC, SAIC, and SAT filings to show falsity, noting that defendant reported revenue numbers in the United States that were inconsistent with those in China; and (4) plaintiffs claimed the Chinese and U.S. accounting standards were sufficiently similar such that the figures should have been substantially the same. *See China Educ. Alliance*, 2011 U.S. Dist. LEXIS 117416, at *3–4, 13–16; *Henning v. Orient Paper, Inc.*, CV 10-5887-VBF(AJWx), 2011 U.S.

Dist. LEXIS 79135 (C.D. Cal. Jul. 20, 2011); *Katz v. China Century Dragon Media, Inc.*, LA CV11-02769 JAK (SSx), 2011 U.S. Dist. LEXIS 142664 (C.D. Cal. Nov. 30, 2011).

In this case, Plaintiffs offer data showing that revenue and net income reported in Gulf's SEC filings are demonstrably higher than the figures reported in SCHC and SYCI's SAIC and SAT filings. (AC ¶¶ 41–74; 91–97.) Plaintiffs allege Gulf's revenues come exclusively from its two subsidiaries, SCHC and SYCI—thus, assuming SCHC and SYCI's SAIC and SAT filings are accurate, Gulf grossly overstated its financial position in its SEC filings. (*Id.* ¶¶ 96–97.) Plaintiffs also allege that the differences between the Chinese and U.S. accounting standards cannot rationally explain the substantial differences between the numbers reported in China and the United States. (*Id.* ¶¶ 98–101.) These allegations, like those in *China Educ. Alliance* and similar cases, are stated with sufficient particularity and adequately pleads falsity. Though the accuracy of Plaintiffs' financial data may be disputed, it would be premature to dismiss the case in light of these factual disputes at the pleading stage.

    *2.    The high inventory turnover rates and profit margins allegation*

Plaintiffs offer other evidence to show that Gulf's financial statements were fraudulent—that Gulf's inventory turnover rates and profit margins were absurdly high compared to its U.S. and Chinese competitors. The AC includes the following facts.

First, according to the SEC 2010 10-K, Gulf's profit margin is high, over fifty percent. (*Id.* ¶ 86.) Second, a comparison of the turnover rates and profit margins between Gulf, a U.S. competitor, and a Chinese competitor suggests that Gulf's numbers are so high that its financial statements must be false—a 50% profit margin based on an inventory turnover rate between 59 to 209 times for Gulf in the years 2008–2010, compared to a profit margin below 20% based on an inventory turnover rate of 7 times for Gulf's competitors. (*Id.* ¶¶ 85–90.) Third, the reported sales and

inventory figures reported by SCHC and SYCI are much lower than that reported by Gulf, but are in line with competitors' figures. (*Id.* ¶¶ 91–93.) Fourth, Plaintiffs point to a Chinese article suspecting Gulf of inflating revenues, which has the side effect of causing the "extremely high turnover rate and abnormally low expenses ratio." (*Id.* ¶¶ 94–95.)

Gulf proffers an exculpable explanation that Gulf produces bromine on demand. (Mot. 12.) Even so, this explanation creates a factual dispute that should not be resolved at the pleading stage. The Court finds that Plaintiffs' allegations give rise to the plausible inference that Gulf reported false financials to the SEC. Thus, these allegations adequately plead falsity.

### 3. *The top bromine producer allegation*

Plaintiffs also allege that Gulf is a much smaller company than it claimed to be in its SEC filings. According to Plaintiffs, Gulf's SEC filings state that it is "one of the largest manufacturers of bromine in China." (*Id.* ¶ 75.) As evidence of falsity, Plaintiffs point to a report issued by CCM International Ltd. in December 2010 that fails to list Gulf or its two subsidiaries among the top 30 bromine producers in China. (*Id.* ¶ 77.) Further, the comprehensiveness of the CCM report, which considered over 100 Chinese bromine producers, makes it improbable that Gulf was missed as "one of the largest manufacturers of bromine in China" if it truly was a top bromide producer. (*Id.* ¶¶ 78–80.) Based on the industry data presented in the CCM report, Gulf's bromine output as reported in its SEC filings would have placed Gulf as the number one Chinese producer, accounting for over 40% of China's bromine production in 2010. (*Id.* ¶¶ 79–82.) This, Plaintiffs assert, cannot possibly be true. (*Id.*)

Gulf attacks the credibility of Plaintiffs' allegation, indicating that Plaintiffs do not actually possess or have access to the CCM report, but relied on an Internet article published by Kerrisdale, a known short seller, which allegedly used the information contained in the CCM report. (Mot. 13–14.) Gulf further disputes the relevance and accuracy of the CCM report itself. (Mot. 14–15.)

It is permissible for Plaintiffs to rely on a short seller report, such as the Kerrisdale article, to allege falsity at the pleading stage. *See China Educ. Alliance*, 2011 U.S. Dist. LEXIS 117416, at *10–13; *Henning*, 2011 U.S. Dist. LEXIS 79135, at *4–5. At this pleading stage, it is inappropriate to decide the accuracy or the truth of the Kerrisdale report. Thus, the Court finds these allegations adequately plead falsity.

### 4. *The related party transactions allegation*

Plaintiffs contend that Gulf's SEC filings failed to disclose related party transactions by hiding the fact that Rongyuan and Hongye are companies related to Gulf. Plaintiffs assert that Gulf is related to Rongyuan and Hongye through ownership and control by Gulf's directors (mainly Yang, Gulf's Chairman of the Board of Directors.) (AC ¶¶ 57–62.) Under SEC Regulation S-K, a public company must disclose related party transactions over $120,000. 17 C.F.R. § 229.404(a).

Rongyuan was Gulf's largest customer in 2010 and its second biggest customer in 2008 and 2009. (*Id.* ¶¶ 107–108.) But Rongyuan's SAIC filing shows that Yang and another Gulf Director own over 90% of Rongyuan. (*Id.* ¶¶ 110–111.) Further, Rongyuan has the same phone number, fax number, address, and website as Haoyuan, suggesting that it is a subsidiary of Haoyuan. (*Id.* ¶¶ 109, 111–112.). Haoyuan is owned by Yang and his wife; Yang is also the founder and Chairman of the Board of Haoyuan. (*Id.* ¶¶ 106, 115–116.)

In addition, Hongye was one of Gulf's three largest suppliers of raw materials. (*Id.* ¶ 60.) But like Rongyuan, Hongye is a subsidiary of Haoyuan and is owned and controlled by Haoyuan, Yang, and his family. (*Id.* ¶¶ 60–62.)

Gulf argues that related party transactions with Hongye were disclosed in 2010 and Hongye was not a related party in 2009. (Mot. 15.) Gulf concludes that the nondisclosure of Hongye in 2009 was not an actionable misstatement. (*Id.*) Gulf does not raise any objections to Plaintiffs' Rongyuan allegations.

/ / /

The question whether Hongye was a related party in 2009 is a question of fact, and is inappropriate to resolve at this stage of litigation. The fact remains that transactions with Rongyuan and Hongye were not disclosed. Thus, based on these allegations, the Court finds that Plaintiffs adequately pleaded falsity.

5. *The related party competitors allegation*

Plaintiffs further allege that Gulf's SEC filings failed to disclose that a direct competitor of Gulf is also company related to Gulf. Specifically, Gulf concealed that Haoyuan is a direct competitor to Gulf's subsidiary SYCI. (*Id.* ¶¶ 116–119.) Plaintiffs allege that these two companies share a similar business scope: for example, both companies produce plastic woven bags and petroleum machinery parts. (*Id.* ¶ 117.) As mentioned above, Haoyuan is controlled by Yang and owned by Yang and his wife. (*Id.* ¶¶ 106, 115–116.) Moreover, Plaintiffs assert that Gulf's SEC filings and Haoyuan's SAIC filings use the same address; thus, this evidences their relationship. (*Id.* ¶¶ 120–121.)

Gulf argues that Plaintiffs' accusations lack specificity and fails to show that the two companies are direct competitors. (Mot. 16–17.) Even if the two companies are competitors, Gulf contends it had no obligation to disclose this relationship. (*Id.*)

Gulf is correct that Regulation S-K does not mandate disclosure of competitors' names. 17 C.F.R. § 229.101(c)(1)(x). Yet, this situation is not typical. Here, Gulf's competitor is closely related. And so, this relationship alone suggests that the general rule not requiring disclosure of competitors does not apply. Indeed, the goal of Regulation S-K is to require disclosure of all information material to investors' understanding of a registrant's business. *See* 17 C.F.R. § 229.101(c)(1). Thus, based on these allegations, the Court finds that Plaintiffs adequately pleaded falsity.

6. *The concealed CEO employment history allegation*

Finally, Plaintiffs allege that Gulf did not disclose in its SEC filings that Liu, Gulf's Chief Executive Officer, was previously employed as the Chief Financial Officer of China Finance, a firm allegedly affiliated with listing a number of

fraudulent Chinese companies in the United States. (AC ¶ 51.) Regulation S-K requires registrants to describe the business experience of each director and officer during the past five years, and if material, the disclosure should cover more than the past five years and include information about the person's particular areas of expertise or other relevant qualifications. 17 C.F.R. § 229.401(e)(1).

Gulf does not dispute that it was required to disclose its officers' and directors' employment history in its annual filings. Instead, Gulf argues that Plaintiffs cannot show that China Finance previously promoted fraud or that Liu was promoting frauds while he was employed there. (Mot. 17–18.)

The Court does not need to probe whether Liu or China Finance were involved with fraudulent securities schemes. The falsity pleaded in Plaintiffs' AC concerns the concealment of Liu's employment history. (AC ¶¶ 122-128.) Plaintiffs contend that the concealed information is material because China Finance is a suspect company with a record of dealings with fraudulent Chinese companies. (*Id.*) Taking these allegations as true, the Court finds that Plaintiffs have adequately pleaded falsity.

**B.     Scienter**

Turning to scienter, the heightened pleading standard imposed by PSLRA requires a plaintiff to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u–4(b)(2); *Gompper*, 298 F.3d at 895. A "strong inference" of scienter is not merely plausible, but must be "cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007). The Supreme Court laid out three prescriptions for courts faced with a Rule 12(b)(6) motion to dismiss a section 10(b) action—the court must: (1) accept all of the factual allegations in the complaint as true; (2) consider the complaint in its entirety along with matters of which a court may take judicial notice; and (3) take into account plausible opposing inferences. *Id.* at 322–323.

/ / /

With this guidance, the Court notes that other courts have found a strong inference of scienter when U.S. listed Chinese companies overstated their financials in SEC filings and failed to disclose related party transactions. *See China Educ. Alliance*, 2011 U.S. Dist. LEXIS 117416, at *17–18; *Henning*, 2011 U.S. Dist. LEXIS 79135, at *16–18. In comparison with these cases, this case has even more facts: significantly different U.S. and Chinese financial filings; high turnover rates and profit margin compared to competitors; related party transactions disclosed in 2010 but not in 2009; concealment of related party competitor; concealment of the CEO's employment history. Viewing these facts holistically, the Court is compelled to find scienter. For instance, Gulf's financials are so grossly overstated compared to that of its two subsidiaries that it cannot be mere negligence. Similarly, Gulf's high turnover rates, profit margin, and status as a top Chinese bromine producer are essential metrics that are known, and should be known by all executives and directors for their respective industries. To blatantly overstate these metrics on a SEC filing amounts to either brazen defiance or reckless negligence. In addition, the omission of Gulf's related parties cannot be unintentional—it would be absurd to suggest that Yang did not know about the operations of his various companies. The opposite is more likely true, that Yang used these related companies to generate business for one another. Finally, Gulf's omission of its CEO's previous employment with China Finance appears to be intentional. Gulf offers no explanation why it was not mentioned. It was likely omitted because its inclusion would have sullied Gulf's reputation—thus, the purpose in omitting the connection is manifest.

Gulf offer several nonculpable explanations. First, Gulf suggests that its offices, directors, and accountants did not have actual knowledge of the alleged falsities. (Mot. 19.) As discussed above, the magnitude of those errors suggest that the errors would have been noticed if they were unintentional. Second, Gulf argues that the discrepancies arise from different accounting rules between China and the United States. (Mot. 21.) Yet, the discrepancies are so great that a mere accounting

1 difference cannot be a plausible reason. Third, Gulf contends that because Gulf was 2 new to the U.S. capital market, Gulf did not fully appreciate the stringent SEC 3 disclosure requirements requiring disclosure of related party transactions. (Reply 10.) 4 While this may be true, this does not negate a finding that scienter was adequately 5 pleaded. The omission of related party transactions is not a trifle. Common sense 6 dictates that this is material information and indeed, Regulation S-K devotes an entire 7 section and notes that it is one of the core disclosures that companies have to report. 8 17 C.F.R. § 229.404; *see* 17 C.F.R. § 229.10(f). Further, this excuse lacks merit 9 because Gulf's SEC filings were independently audited. (AC ¶¶ 129–135.)

10 What is more, Gulf attempts to negate the inference of scienter by arguing lack 11 of motive—that the individual Defendants did not sell Gulf's stock during the class 12 period, but instead increased their holdings. (Mot. 20–21.) Plaintiffs refute by 13 pointing out that Yang's wife sold a large number of shares. (Opp'n 20.) Though 14 Gulf proposes a countervailing inference, this merely raises a factual dispute. Further, 15 the absence of motive to profit is relevant but not dispositive. *See Matrixx Initiatives,* 16 *Inc. v. Siracusano*, 131 S. Ct. 1309, 1324 (2011).

17 In sum, when Plaintiffs' allegations are viewed collectively, the Court finds that 18 the inference that Gulf acted with intent is "at least as compelling as any opposing 19 inference one could draw from the facts alleged." *Tellabs*, 551 U.S. at 324. Plaintiffs 20 have adequately pleaded scienter, but whether they can prove their allegations and 21 establish scienter is another question.

22 **C. Loss Causation**

23 The final issue is whether Plaintiffs have sufficiently pleaded loss causation. 24 PSLRA requires plaintiffs to prove that "the act or omission of the defendant . . . 25 caused the loss for which the plaintiff seeks to recover damages." 15 U.S.C. § 78u-26 4(b)(4). In a securities fraud action, "loss causation is the causal connection between 27 a defendant's material misrepresentation and a plaintiff's loss." *Metzler Inv. GMBH* 28 *v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1062 (9th Cir. 2008) (citing *Dura Pharm.*,

544 U.S. at 342). The complaint must allege that the defendant's share price fell significantly after the truth became known. *Id.* But a plaintiff need not show that a defendant's "misrepresentation was the sole reason for [an] investment's decline in value in order to establish loss causation." *Id.* Plaintiff needs only show "some indication that the drop in [defendant's] stock price was causally related to [its] financial misstatements." *In re Daou Sys., Inc.*, 411 F.3d 1006, 1026 (9th Cir. 2005).

Furthermore, "loss causation becomes most critical at the proof stage . . . and it is normally inappropriate to rule on loss causation at the pleading stage." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1057 (9th Cir. 2008). Thus, for this element of a section 10(b) claim, a pleading needs enough facts "to raise a reasonable expectation that discovery will reveal evidence of loss causation." *Id.*

Here, Plaintiffs allege that once the fraud was publically disclosed by the Glaucus report on April 26, 2011, Gulf's stock price fell $1.16 per share, or over thirty percent, on heavy trading volume, causing substantial financial damages to investors. (*Id.* ¶¶ 15–17.) A short seller report may be used to establish loss causation. In *Henning*, the court found that the plaintiff sufficiently pleaded loss causation by relying on a short seller report, because "Plaintiffs' losses stem from the [short seller] report's revelation of these alleged frauds." *Henning*, 2011 U.S. Dist. LEXIS 79135, at *22. Likewise, the Court finds that the Glaucus report publicly revealed Gulf's alleged fraud and as a result, Gulf's stock price immediately fell over thirty percent after the revelation. (AC ¶¶ 15, 17.)

Gulf makes a truth on the market defense and argues that the negative facts concerning Gulf were disclosed prior to the Glaucus report and were already priced into its stock. (Mot. 23–24.) Yet, there is no evidence to suggest that these negative facts were already publically known. For example, Gulf's SAIC filings were not public, and even if they were, they are not readily accessible for U.S. investors. *In re Fuwei Films Sec. Litig.*, 634 F. Supp. 2d 419, 438 (S.D.N.Y. 2009) (Chinese-language article in Chinese news media not public information.)

Finally, Gulf's suggestion that Plaintiffs cannot suffer any loss as a result of fraud that was not disclosed until after the close of the class period is incorrect. (Mot. 25.) Court have held otherwise. *In re Dura Pharm., Inc. Sec. Litig.*, 452 F. Supp. 2d 1005, 1023 (S.D. Cal. 2006) (rejecting the notion that loss causation is absent when the corrective disclosures occur after the close of the class period).

Thus, the Court finds that Plaintiffs have adequately pleaded loss causation by tying their economic loss to the Glaucus report.

## IV. CONCLUSION

For the reasons discussed above, Plaintiffs have adequately plead falsity, scienter, and loss causation. Accordingly, Gulf's motion to dismiss is **DENIED**.

**IT IS SO ORDERED.**

May 15, 2012

_____

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**